PEOPLE v. MELVIN HARRIS

1. CRIMINAL LAW — INEFFECTIVE COUNSEL — ALIBI WITNESS NOT CALLED.

Defendant received the effective assistance of counsel, even though trial counsel at defendant's second trial, after the defendant's first trial had ended in a mistrial, failed to call two alibi witnesses called at the first trial, where the attorney at the second trial consulted with the attorney from the first trial about calling the witnesses, the attorneys agreed that it would be a tactical error to call the witnesses, especially since one witness could have been discredited, and the defendant was allowed to make the final decision whether to call one of the witnesses.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  21 Am Jur 2d, Criminal Law §§ 319, 321.
[2]  5 Am Jur 2d, Appeal and Error § 545.
     21 Am Jur 2d, Criminal Law §§ 319, 321.
[3]  21 Am Jur 2d, Criminal Law §§ 319, 321, 358.

2. Criminal Law—Ineffective Counsel—Facts Not of Record—Testimonial Record.

   To the extent that a claim of ineffective assistance of counsel depends on facts not of record, the appealing defendant must, before filing his brief in the appellate court, make a testimonial record at the trial level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately.

3. Criminal Law—Ineffective Counsel—Attorney-Client Privilege—Testimonial Record.

   A defendant is deemed to have waived the attorney-client privilege to the extent necessary to permit an inquiry concerning the adequacy of the representation received from his attorney where the defendant in connection with a motion for a new trial causes a hearing to be held in order to make a testimonial record of facts not of record necessary to support his claim of ineffective assistance of counsel.

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 January 12, 1971, at Detroit. (Docket No. 8996.) Decided October 1, 1971.

Melvin Harris, Jr., was convicted of rape. Defendant appealed. Remanded for a hearing on the issue of ineffective assistance of counsel. The trial court found that defendant had received the effective assistance of counsel. Conviction affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Gerald F. Wigle,* for defendant on appeal.

Before: V. J. Brennan, P. J., and Fitzgerald and Levin, JJ.

LEVIN, J.     The defendant, Melvin Harris, Jr., appeals his conviction of rape.     MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).

At the trial, the victim testified that between 7:30 and 8 p.m., while she was standing at a street corner waiting for a bus, a man with a knife grabbed her and forced her to accompany him into a dark alley where the charged offense was committed.     She said there was sufficient light to see her assailant's face. After the rape, clad only in underclothes, she hailed a cab driver.     There was testimony that she was trembling and hysterical.

The defendant lived with his parents in the same general neighborhood where the crime was committed.     Some months afterwards, the victim saw the defendant on the street, recognized him as her assailant, and called the police.     The defendant was arrested and the victim identified him at the trial.

It is apparent that there was sufficient evidence to convict.     It is the function of the jury, as the trier of fact to determine the credibility of the witnesses and to appraise the accuracy of their testimony.

The defendant was convicted following a second trial for the charged offense.     The jury at the first trial was unable to agree on a verdict and a mistrial was declared.

The defendant has been represented by four different lawyers in this matter.     One lawyer represented him at the preliminary examination, another at the first trial, another at the second trial, and still another on this appeal.

The defense was alibi.     The defendant claimed that he was home sick in bed with a strep throat at the time the crime was committed.     No other testimony or evidence was offered in support of his alibi.

One of the assignments of error on this appeal is that the lawyer who represented the defendant at the second trial deprived him of the effective assistance of counsel by failing to call his mother and a Doctor Jones to testify in support of his alibi as they had at his first trial.

We were impressed with the apparent merit of this assignment of error and ordered an evidentiary hearing focused on the effective assistance of counsel question, *viz.*:

"It is ordered that this case is remanded to the trial court for an evidentiary hearing on the allegations contained in the defendant's affidavit of August 7, 1970 that he informed the attorney appointed to represent him at the second trial that Dr. Jones had testified at the preliminary examination and at the first trial in support of his alibi and on the defendant's allegations therein that the attorney appointed for the second trial did not conscientiously prepare the case for trial, and for a determination, after hearing both the defendant and his attorney, whether the attorney was justified in not calling Dr. Jones and the defendant's mother to testify at the second trial and of whether he conscientiously prepared the case for trial.

"Before the hearing, the defendant's present attorney and the prosecutor shall be furnished at county expense with copies of the transcript of the testimony at the first trial of Dr. Jones, the defendant's mother, and of the defendant.

"The trial court shall, after making its determination, file with our Court the transcript of the proceedings and of its determination and the transcripts of the testimony of Dr. Jones, the defendant's mother, and of the defendant at the first trial."

The evidentiary hearing was held and the trial judge found that the defendant's claim of ineffective assistance of counsel was not substantiated:

"In this court's view, the evidentiary hearing clearly established that the defendant's attorney at the second trial adequately and conscientiously prepared his case for trial. He thoroughly discussed the defense with the defendant's attorney at the first trial, and together they concluded that it would be inadvisable to call Dr. Jones and the defendant's mother as alibi witnesses. In the view of both attorneys it would have been a tactical error to call Dr. Jones as a witness. The transcript of the hearing further reflects that the final decision not to call Dr. Jones was left to the defendant. The transcripts disclose ample justification for not calling Dr. Jones as a witness. The policewoman was prepared to testify that the record entered by the doctor at defendant's first trial was different when she first saw it at the doctor's office shortly after defendant's arrest. She would have established a possible alteration of the doctor's patient card, thereby raising serious questions concerning Dr. Jones' effectiveness as a witness. This court cannot say that the attorneys made an improper decision. He is bound by his trial tactics."

The stenographic record made at the remand hearing amply supports the judge's findings.[1]

---

[1] The lawyer who represented the defendant at his first trial testified that "it was my opinion that on the retrial of this matter—I told him frankly that Mr. Carter, the prosecutor, had been most effective in cross-examining Dr. Jones. There were some questions raised regarding his records and the fact that Dr. Jones was a doctor advanced in years. I thought perhaps it might be inadvisable to call him. I said if I were retrying the case I would not call Dr. Jones."

An examination of the record of the first trial reveals that Dr. Jones had in fact been effectively cross-examined by the prosecutor. Dr. Jones testified, in effect, that the defendant had been in his office on the evening of March 9, the date of the rape, sometime between the hours of 7 and 9, his usual evening office hours. It was clear that the doctor was not testifying from independent memory but rather based his testimony solely on his office record which indicated that the defendant had been in his office on March 9.

The history of this litigation demonstrates the soundness of our recent ruling in *People* v. *Jelks* (1971), 33 Mich App 425, 431, where we declared:

"A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level *in connection with a motion for a new trial* which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately." (Emphasis supplied.)

---

The prosecutor argued that the doctor's records had been altered to indicate that the defendant's visit was on March 9 when in fact it had been on March 8.

A policewoman testified at the first trial that she had visited the doctor in September 1969, after having received notice of an alibi defense and at that time was shown the records which were later exhibited at the first trial as the basis for the doctor's testimony that defendant had been in his office on March 9. She testified that at the time of her visit the cards did not indicate the date of the defendant's appointment. The date was later inserted in ink of a different color than the other writing on the card.

It was also brought out at the first trial that the doctor had filled in certain insurance papers relating to the defendant's illness with false information; on such papers he had indicated that the defendant had been treated by him eight times when in fact he had only been treated three times. Also, the date of the last treatment indicated on these papers was March 8, the day before the crime was committed.

The lawyer who represented the defendant at his second trial testified at the remand hearing that he discussed the question of calling Dr. Jones with the defendant and told him that his best advice was not to call the doctor and that the defendant "agreed to that. I left the final decision up to him as to which way to proceed. That decision was his and I told him that the decision was his." The defendant acknowledged that his second trial lawyer had discussed the matter with him and that on his lawyer's advice he had felt it would be better not to call Dr. Jones.

Defendant's second trial lawyer stated that he did not call the defendant's mother to testify because he felt that it would be a tactical mistake to call her and not the doctor, and besides, all she could testify to was that the defendant had been at the doctor's office sometime between the hours of 7 and 9.

Economy in the administration of justice requires that we adhere as a general proposition[2] to the rule declared in *Jelks* that to the extent a claim of inadequacy depends on facts not of record the appealing defendant must, *before* filing his brief in our court,[3] make a testimonial record at the trial level in connection with a motion for new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately. In connection with such a hearing, the appealing defendant is deemed to have waived the attorney-client privilege to the extent necessary to permit an inquiry concerning the adequacy of the representation he received.[4]

Affirmed.

All concurred.

---

[2] The hearing on remand in this case was ordered before *Jelks* was decided. Also, a compelling showing had been made in this case that there might have been ineffective assistance; it appeared that an alibi witness who was not called at the second trial had testified in support of the alibi at the first trial.

[3] The motion for a new trial can be filed before a claim of appeal is filed or, with our court's permission, while an appeal is pending in our court. We have granted permission in a large number of cases pending on appeal to file an application in the trial court for leave to file a delayed motion for a new trial.

[4] See *People v. Thomas* (1971), 33 Mich App 664, 676 (Levin, J., *concurring*):

"On the issue of whether the defendants' trial lawyers had a good reason [not to call a witness], the trial judge was not precluded by the attorney-client relationship from asking them to explain their failure to call * * * a witness. To rule that such inquiry is barred would be to shield inadequate representation and unduly impede the establishment of a meritorious claim of ineffective assistance. A client who attacks the adequacy of the representation he received at his trial waives the attorney-client privilege to the extent necessary to permit an inquiry concerning the adequacy of his representation."

"The plaintiffs waived the privilege when they charged their former attorney with incompetency and unpreparedness." *Everett v. Everett* (1947), 319 Mich 475, 484. Similarly, see *Leverich v. Leverich* (1954), 340 Mich 133, 137; 8 Wigmore, Evidence, § 2326, p 638, fn 4.